**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sherry Gass,<br><br>              Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>              Defendant. | No. CV-21-08093-PCT-DJH<br><br>**ORDER** |

Plaintiff seeks judicial review of the Social Security Administration ("SSA") Commissioner's decision denying her application for SSA disability benefits. Plaintiff filed her Opening Brief (Doc. 17). Defendant filed a Response Brief (Doc. 20), and Plaintiff filed her Reply Brief (Doc. 21). The Court has reviewed the briefs and the Administrative Record (Doc. 13-3, "R."). For the following reasons, the Court affirms the Administrative Law Judge's ("ALJ") decision.

**I.     Background**

On March 27, 2017, Plaintiff protectively filed an application for a period of disability and disability benefits with an alleged onset date of March 24, 2017.[1] (R. at 14). An ALJ issued an unfavorable decision on August 25, 2020. (R. at 23). The Appeals Council denied Plaintiff's request for review. (R. at 2). This appeal followed.

---

[1] The Court notes Plaintiff requested to amend the onset date to December 31, 2016. (Doc. 13-3 at 14). In his decision, the ALJ considered the amended onset date of December 31, 2016, through March 5, 2018. (*Id.* at 18).

The Court notes a prior ALJ decision on August 25, 2015, found Plaintiff not disabled. (*Id.* at 14).

Plaintiff claims several impairments to her ability to work. (R. at 18). The ALJ found Plaintiff had the following severe impairments: degenerative joint disease in the right knee, obesity, diabetes mellitus, and hypertension. (*Id.*)

During her symptom testimony Plaintiff represented that she is unable to work due to knee problems, arthritis in hands and knees, diabetes, and high blood pressure." (R. at 19). She also testified that she cannot stand still for 15 minutes and must sit down to rest her legs. (*Id.*) She alleged her right knee replacement has not improved and the swelling makes it difficult for her to walk. (*Id.*) In addition, she testified she used a cane to ambulate. (*Id.*)

The ALJ, citing to medical records, found Plaintiff's symptom testimony was "not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 19). The ALJ concluded that Plaintiff had the residual functional capacity to perform "light work . . . except claimant can never climb ladders, ropes or scaffolds, occasionally climb ramps and stairs, frequently balance and stoop, and occasionally kneel, crouch, crawl and occasionally be exposed to hazards, such moving mechanical machinery and unprotected heights." (R. at 18). The ALJ further found that Plaintiff's residual functional capacity did not preclude her from performing past relevant work-related activities, such as "a cashier/checker, housekeeping/cleaner, convenience store clerk, and tallier." (R. at 22). The ALJ therefore determined Plaintiff was not disabled. (*Id.*)

Plaintiff raises three issues: (1) whether the ALJ erred in rejecting Plaintiff's own symptom testimony; (2) whether the ALJ erred in relying on the opinion of the non-examining state agency physician in determining Plaintiff's work capacities; (3) whether the ALJ erred in failing to consider Plaintiff's upper extremity impairments as a medically determinable or severe impairment. (Doc. 17 at 1).

**II.  Standard of Review**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines no such work is available, the claimant is disabled. *Id.*

**III.   Discussion**

The Court finds the ALJ did not err in rejecting Plaintiff's symptom testimony. The

Court further finds the ALJ did not err in relying on the non-examining state agency physician. Finally, the Court finds the ALJ properly assessed Plaintiff's impairments at step two.

### A. Plaintiff's Symptom Testimony

Plaintiff argues the ALJ erred when he rejected Plaintiff's symptom testimony. (Doc. 17 at 11). When an ALJ evaluates a claimant's symptoms, he considers symptom testimony, objective medical evidence, and other evidence in the record. 20 C.F.R. § 404.1529(c). An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. § 404.1529(c)(2). The ALJ may, however, "reject the claimant's testimony about the severity of [the] symptoms" provided that the ALJ also explains his decision "by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).

Plaintiff first argues the ALJ erred when he rejected Plaintiff's symptom testimony because "the ALJ failed to show anything specific in the medical record was inconsistent with any particular portion of [Plaintiff's] symptom testimony." (Doc. 17 at 13). She argues "a claimant is not required to provide medical evidence of the severity of those symptoms." (*Id.* at 12). Indeed, when a claimant produces medical evidence of an underlying impairment that is reasonably likely to be the cause of the alleged pain, the law does not require Plaintiff to provide medical findings that "support the severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991). But the ALJ did not discredit Plaintiff's alleged severity of pain because she failed "to provide medical evidence of the severity of those symptoms." To the contrary, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (R. at 19). Under 20 C.F.R. § 416.929(a), an ALJ is required to consider a claimant's symptoms "and the extent to which [the] symptoms can reasonably be accepted as consistent with the

objective medical evidence and other evidence" in the record. The ALJ thus found "the claimant [had] the residual functional capacity to perform light work . . . ." (R. at 18).

As to the medical evidence and other evidence, the ALJ discussed numerous treatment records to support his decision and cited to specific records to support his findings. First, the ALJ cited to Plaintiff's physical therapy examination findings that revealed "she attended physical therapy off and on but has returned to work and that her work schedule has interfered with her ability to attend physical therapy." (R. at 20). Second, he discussed Plaintiff's MRI and x-ray findings, noting that the "[r]ecords indicate [Plaintiff] continued to perform substantial gainful activity with [her knee] condition." (*Id.*) Third, he noted Plaintiff's diabetic condition was "well controlled" and that "[t]here has been no indication of ancillary effects, such as diabetic retinopathy, neuropathy, compromised kidney function or heart problems." (*Id.* at 21). The ALJ thus concluded Plaintiff had the "residual functional capacity to perform light work . . . except claimant can never climb ladders, ropes or scaffolds, occasionally climb ramps and stairs, frequently balance and stoop, and occasionally kneel, crouch, crawl and occasionally be exposed to hazards, such moving mechanical machinery and unprotected heights." (*Id.* at 18).

For these reasons, the ALJ properly concluded the records indicated Plaintiff continued to perform substantial gainful activity with her knee and other conditions. (R. at 20). Because substantial evidence supports the ALJ's findings, the Court finds the ALJ did not err by discounting Plaintiff's symptom testimony.

**B. Dr. Sapin's Medical Opinion**

Plaintiff argues the ALJ improperly weighted the opinion of Dr. Sapin. (Doc. 17 at 15). Specifically, she argues the ALJ "did not specify what evidence supported the [Dr. Sapin's] opinion and did not specify what supported the ALJ's residual functional capacity determination for the period from [Plaintiff's] onset of disability in December 2016 until October 2017." (*Id.* at 18).

Plaintiff filed her application on March 27, 2017. (R. at 13-3 at 14). For disability benefits claims filed on or after March 27, 2017, new SSA regulations instruct an ALJ not

to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c.  An ALJ should instead determine the persuasiveness of each medical opinion using the following factors: 1) supportability, 2) consistency, 3) relationship with the claimant, 4) specialization, and 5) any other relevant factors.  *Id.*

Under this scheme, the most important factors that the ALJ considers are "supportability" and "consistency."  20 C.F.R. § 404.1520c(b)(2).  The regulations define supportability as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings." *Id.* § 404.1520c(c)(1).  The ALJ should also treat opinions as more persuasive if they are more consistent with "other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2).

> The ALJ addressed Dr. Sapin's opinion as follows:
> The prior administrative finding by the state's medical consultant at the reconsideration level was that claimant could perform light work, never climb ladders, ropes or scaffolds, occasionally climb ramps and stairs, kneel, crouch, and crawl, frequently balance and stoop, and must avoid concentrated exposure to hazards. (Ex. C10A) The undersigned is persuaded by this opinion, as it is supported by the cited evidence, including that of claimant's right knee replacement, and it is generally consistent with the longitudinal evidence through March 2018 when claimant returned to substantial gainful activity. The variable control of diabetes and hypertension, as well as the continued swelling and range of motion limitations in the right knee warranted the above limitations. (Ex. C12F pg. 32, 43, 69; C15F pg. 12-25; C19F pg. 22- 54, 89).

The Court finds that the ALJ did not err when assessing Dr. Sapin's medical opinion. Contrary to Plaintiff's assertions, the ALJ specified what evidence supported his determination.  Indeed, in the ALJ's analysis of Dr. Sapin's medical opinion, the ALJ summarized the relevant periods of Plaintiff's medical record, including "claimant's right knee replacement," and found Dr. Sapin's opinion was "generally consistent with the longitudinal evidence through March 2018 when claimant returned to substantial gainful

activity." (R. at 21). The ALJ further noted, "[t]he variable control of diabetes and hypertension, as well as the continued swelling and range of motion limitations in the right knee warranted the above limitations." (*Id.*) Thus, the ALJ did not err when determining that Dr. Sapin's medical opinion was persuasive.

### C. The ALJ's Step Two Sequential Evaluation of Plaintiff's epicondylitis (tennis elbow) and trigger fingers

Plaintiff argues the ALJ erred at step two of the sequential evaluation process when he failed to determine Plaintiff's epicondylitis (tennis elbow) and trigger fingers did not result in more than a minimal effect on Plaintiff's ability work during the period at issue. (Doc. 17 at 20). The Commissioner argues the step two findings are a *de minimis* screening to determine whether the sequential disability analysis should continue and, because it did here, the ALJ's error was harmless. (Doc. 20 at 20).

Step two includes "a *de minimis* screening device" for weeding out groundless claims. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). At step two, a claimant must establish the existence of a medically determinable impairment by objective medical evidence; a mere diagnosis, medical opinion, or statement of symptoms will not suffice. 20 C.F.R. §§ 404.1521, 416.921. Once established, the ALJ then considers whether the impairment, individually or in combination with other impairments, is "severe" and expected to last more than twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b).

Ninth Circuit law is unclear on how to evaluate claims of step-two error. Some cases suggest that "although it is error for an ALJ to fail to characterize a particular impairment as 'severe' during step two, the error can be disregarded as harmless if the ALJ properly addresses the impairment during later steps." *Sharp v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1043393, *3 (D. Ariz. 2019) (citations omitted). Other opinions suggest "a claimant can't complain about an ALJ's failure to identify a particular impairment as

'severe' during step two so long as the ALJ determined the claimant also had other impairments that so qualify." *Id.* (citations omitted). The case law agrees, however, that "[t]he dispositive issue . . . is whether the ALJ properly evaluated the evidence and testimony concerning that condition during later steps and factored that condition into the RFC." *Id.*

Here, the ALJ found Plaintiff had the following severe impairments: degenerative joint disease in the right knee, obesity, diabetes mellitus, and hypertension. (R. at 18). The ALJ did not find Plaintiff's epicondylitis (tennis elbow) and trigger finger impairments as non-severe, but he did expressly state "[t]he undersigned considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity." (R. at 16). Moreover, in his discussion of Plaintiff's residual functional capacity, he notes "[p]hysical exam noted epicondylitis and tenderness over the joint line in the right knee, along with pain with range of motion. [Plaintiff] was treated with IV antibiotics." (R. at 20). Thus, because the ALJ considered all the impairments, whether severe or non-severe, in determining Plaintiff's residual function capacity and because step two was decided in Plaintiff's favor, the Court finds any alleged error is harmless and cannot be the basis for a remand. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (finding the ALJ did not err at step two when he found plaintiff's antisocial personality disorder a non-severe impairment because the impairment was still considered for plaintiff's RFC and step two was decided in Plaintiff's favor); *see also Sharp*, 2019 WL 1043393 at *3 (declining to find the ALJ erred in step two when he found plaintiff's atrial fibrillation a non-severe impairment because the dispositive issue was whether the ALJ considered the non-severe impairment when he evaluated plaintiff's RFC).

**IV. Conclusion**

The Court finds the ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence. The Court also finds substantial evidence supports the ALJ's decision to classify Dr. Sapin's

medical opinion as persuasive and consistent with the medical record.  The Court further finds the ALJ did not error at step two because he properly considered Plaintiff's non-severe impairments in assessing her residual functional capacity.  Therefore, the Court finds that the ALJ did not err in his decision, which is based on substantial evidence.  *See Orn*, 495 F.3d at 630.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the ALJ is **affirmed**.  The Clerk of Court is directed to enter judgment accordingly and terminate this action.

Dated this 11th day of August, 2022.

Honorable Diane J. Humetewa
United States District Judge